E-FILED on 11/2/2011

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SYNTHES USA, LLC (f/k/a SYNTHES (U.S.A.)); SYNTHES USA SALES, LLC; and SYNTHES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SPINAL KINETICS, INC., <br><br> Defendant. | No. C-09-01201 RMW <br><br> PRETRIAL ORDER AND RULINGS ON MOTIONS *IN LIMINE* <br><br> **[Re Docket Nos. 301, 307, 308, 309, 311-17, 324, 372, 373, 374 and 376]** |

**I. Orders Regarding Trial Procedures**

**A. Anticipated Trial Schedule**

Monday, November 7, 2011 - 8:00 a.m. (Prospective jurors fill out Questionnaire and parties arrange for copying. Potential jurors with hardships excused. Court considers any outstanding issues.)

Tuesday, November 8, 2011 - 9:00 a.m. (Jury selection)

Wednesday, November 9, 2011 - OFF

Thursday, November 10, 2011 - OFF

Friday, November 11, 2011 - OFF

Monday, November 14, 2011 - 1:00 p.m. to 5:00 p.m. (Pre-instructions, FJC video

1 played, opening statements)

2 Tuesday, November 15, 2011 - 8:30 a.m. to 1:30 p.m.

3 Wednesday, November 16, 2011 - 8:30 a.m. to 1:30 p.m.

4 Thursday, November 17, 2011 - 8:30 a.m. to 1:30 p.m.

5 Friday, November 18, 2011 - 8:30 a.m. to 1:30 p.m.

6 Monday, November 21, 2011 - 1:00 p.m. to 5:00 p.m.

7 Tuesday, November 22, 2011 - 8:30 a.m. to 1:30 p.m.

8 Wednesday, November 23, 2011 - 8:30 a.m. to 1:30 p.m.

9 Thursday, November 24, 2011 - OFF

10 Friday, November 25, 2011 - OFF

11 Monday, November 28, 2011 - 1:00 p.m. to 5:00 p.m.

12 Tuesday, November 29, 2011 - 8:30 a.m. to 1:30 p.m.

13 Wednesday, November 30, 2011 - 8:30 a.m. to 1:30 p.m.

14 Thursday, December 1, 2011 - 8:30 a.m. to 1:30 p.m.

15 Friday, December 2, 2011 - OFF

16 Monday, December 5, 2011 - 1:00 p.m. to 5:00 p.m.

17 Tuesday, December 6, 2011 - 8:30 a.m. to 1:30 p.m.

18 Wednesday, December 7, 2011 - 8:30 a.m. to 1:30 p.m.

19 Thursday, December 8, 2011 - 8:30 a.m. to 1:30 p.m.*

20 *Plus Deliberations

21 **B.  Jury Selection**

22 Nine jurors; three peremptory challenges per side

23 Each side will have 20 minutes for follow-up voir dire

24 **C.  Trial Time Limits**

25 Each side will have 26 hours to present its case, not including jury selection and

26 closing argument. Up to 50 minutes of the 26 hours may be used throughout the trial for interim

27 commentary.

28

PRETRIAL ORDER AND RULINGS ON MOTIONS *IN LIMINE*  —No. C-09-01201 RMW

2

**D. Disclosure of Intent to Call Witnesses and Offer Exhibits**

Notice of the names of witnesses intended to be called and the specific numbered exhibits intended to be offered must be given by 5:00 p.m. on the second day before they are intended to be called or offered. Exhibits will use the number assigned during discovery.

**E. Miscellaneous**

1. Witnesses are not excluded from the courtroom.

2. Photographs will be taken of the witnesses immediately before they are called to testify and copies given to the jurors. A still photograph of any witness who testifies by video will be taken from the video.

## II. Rulings on *In Limine* Motions

**Synthes USA, LLC's[1] *In Limine* Motions**

**To Preclude Inappropriate Arguments Set Forth in Spinal Kinetics' Trial Brief**

To preclude Spinal Kinetics from presenting evidence or arguing:

1. that the Spinal Kinetics M6 device is superior to the ProDisc device. Denied. The evidence may be relevant to, for example, the calculation of a reasonable royalty;

2. that the Patent Office allowed claims 29-31 of the '270 patent without adequate consideration. Denied to the extent that the parties may present the file history and offer evidence about relevant PTO practices and procedures. Such evidence may be relevant to showing whether clear and convincing evidence establishes that the claims-at-issue are invalid. The motion is granted to the extent that the parties are precluded from offering purported expert opinion testimony that the PTO did or did not give adequate consideration in allowing claims 29-31 (lack of foundation for expert testimony);

3. that Synthes' assertion of claims 29-31 is counter to the Constitutional purpose of the patent system or that it is meant to stifle competition. Granted. Assertion is irrelevant to issues before jury, and even if marginally relevant, FRE 403 concerns substantially outweigh the probative value of such evidence; and

---

[1] Synthes USA, LLC is referred to herein as Synthes unless the context indicates otherwise.

4. that if Synthes prevails at trial the public will be deprived of Spinal Kinetics' purported medical advance.  Denied to the extent that probability of injunction may be relevant to negotiation of reasonable royalty; granted to the extent that Spinal Kinetics cannot argue that a finding of infringement will deprive the public of the use of a medical advance.

**To Exclude Testimony of Marti Conger**

To preclude the testimony of Marti Conger (purported expert patient advocate).  Granted. She does not qualify as an expert, there is a lack of foundation and her proposed testimony in large part consists of hearsay.

**To Limit Spinal Kinetics' Patent Invalidity Evidence to that Raised in Disclosures and Preserved in Opening Reports**

Specifically to preclude:

1. Dr. Levenston from testifying on the written description defense.  Denied except as to alleged failure of written description as to "plurality of openings" which does not appear to have been addressed.  Although Dr. Levenston's disclosure of an opinion on the written description defense in his report is marginal at best, Synthes will not be prejudiced as it has sufficient knowledge of Levenston's anticipated testimony to be fully prepared to address it;

2. Mr. Koske or any other witness from testifying regarding the fluid filled "elastic formed body."  Denied.  The proposed testimony was disclosed timely as a non-infringement defense;

3. any expert from expressing an expert opinion on the best mode defense. Granted to the extent that expert opinion testimony from non-percipient witness is precluded because no expert was disclosed on the subject; however, this does not exclude testimony from Dr. Baumgartner or any other percipient witness;

4. that Dr. Lee not be permitted to testify regarding the anticipation and obviousness defenses.  Denied.  Synthes will not be prejudiced as it has sufficient knowledge of Dr. Lee's anticipated testimony to be fully prepared to address it and otherwise objection goes to weight not admissibility;

5. testimony that the Lee (U.S. Patent No. 4,911,718), Frey

(U.S. Patent No. 4,932,969) and Kim (U.S. Patent No. 7,153,325) references anticipate or render obvious the '270 patent.  Granted (not opposed).

**Spinal Kinetics, Inc.'s *In Limine* Motions**

> **Motion *In Limine* No. 1: To Strike April 14, 2011 Report of Tollison and Preclude Testimony Concerning Reasonable Royalty Damages**

Preclude Dr. Tollison from testifying concerning reasonable royalty damages.  Denied in part.  The objection, except as to moving costs, goes to weight, not admissibility.  Granted as to Dr. Tollison's testimony about the costs of moving Spinal Kinetics' manufacturing operations to Germany.  The testimony giving specific moving cost estimates is excluded because it lacks foundation and is not based upon the type of information reasonably relied upon by experts in the field.

Spinal Kinetics seeks to exclude Dr. Tollison's reasonable royalty opinion primarily on the basis that his opinion assumes a hypothetical negotiation between the wrong parties.  He treated Synthes USA, LLC, Synthes USA Sales, LLC and Synthes, Inc. as a single entity that hypothetically negotiated a reasonable royalty with Spinal Kinetics.  Spinal Kinetics argues that its position is supported by *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1317-19 (Fed. Cir. 2010) which held, as the court did here, that only the patent owner or an exclusive licensee has standing to bring an infringement suit.  Neither Synthes USA, LLC nor Synthes, Inc. was an owner or exclusive licensee.  *Spine Solutions* dealt with standing, however, and not the factors that can be considered in a hypothetical negotiation.  There is no question but that Synthes USA Sales, LLC and Synthes, Inc. lack standing to bring an infringement claim.  Lack of standing, however, does not mean that Synthes USA Sales, LLC would not have been influenced in a hypothetical negotiation by the economic impact that a license would have on its parent and sister companies.  Although Dr. Tollison should have assumed a hypothetical negotiation between Synthes USA Sales and Spinal Kinetics, LLC, it seems clear that Dr. Tollison is of the opinion that a royalty negotiated by them would have been no different from the royalty that he opined would have been negotiated with the three Synthes companies acting as one entity in the negotiations.  He suggests that Synthes USA Sales, LLC would not have entered any negotiation without considering, or even considering itself as having, the competitive position of its corporate parent and sister companies.  *See Union Carbide*

*Corporation Chems. & Plastics Tech.*, 425 F. 3d. 1366, 1378 (Fed. Cir. 2005) *overruled on other grounds by Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348 (Fed. Cir. 2009).

The court does not find that Dr. Tollison's opinion should be excluded based upon his assumption as to the participants in the relevant hypothetical negotiation. He can certainly be cross-examined about the assumptions he made and the jury can weigh the effect of them on the trustworthiness of his opinion.

Spinal Kinetics also seeks exclusion of evidence Dr. Tollison uses in connection with the determination of a reasonable royalty. It objects to evidence of the profit lost by Synthes on each sale of a Spinal Kinetics' M6 device as opposed to a ProDisc device and the incremental profit Spinal Kinetics made on each sale of an infringing product. Synthes correctly asserts that Dr. Tollison has an adequate foundation for this evidence to be admissible and that the weight to be given to it is up to the jury.

Spinal Kinetics also argues that Dr. Tollison's opinion should not be admitted because he failed to consider relevant licenses and other agreements. Again, however, Spinal Kinetics' objection is not a basis for excluding his opinion, and Dr. Tollison's lack of consideration is a weight issue to be evaluated by the jury.

Finally, Spinal Kinetics submits that Dr. Tollison should not be allowed to rely on the alleged cost to move Spinal Kinetics' manufacturing operations to Germany as a factor supporting his reasonable royalty calculation. Dr. Tollison relies on oral information provided by Synthes employees on how much it would cost Synthes to move, assumes Spinal Kinetics would move to Germany as opposed to some other country, and assumes the time it would take to accomplish a move. Dr. Tollison essentially relies on what he was told by Synthes employees not backed up by an independent analysis of records. Although an expert can rely on hearsay, it must be information of the type reasonably relied upon by experts in the field. *See* FRE 703. The court finds that Dr. Tollison's testimony relating to costs that would have been incurred by Spinal Kinetics to move its manufacturing operations to Germany is not admissible and cannot be relied upon by Dr. Tollison in determining a reasonable royalty.

The other issues raised by Spinal Kinetics in its motion to exclude Dr. Tollison's testimony are not persuasive.

**2. Motion *In Limine* No. Two: To Preclude Synthes from Asserting a Priority Date Earlier than April 14, 2003.**

To prevent Synthes from asserting a priority date for the patent-in-suit that predates the alleged Patent Cooperation Treaty filing date of April 14, 2003. Granted (by stipulation).

Synthes asserted as a "cross-motion *in limine*" to exclude the Kim '325 patent and the testimony by Drs. Kim, Lee and Ha re: Pre-August 1, 2003 work. Denied. The Kim '325 patent is not prior art and Spinal Kinetics clearly cannot claim that it is. However, testimony about the work done by Drs. Kim, Lee and Ha at Stanford prior to August 1, 2003 has some relevance to the level of ordinary knowledge or skill in the art and may suggest contemporaneous independent invention. *See Monarch Knitting Machinery Corp. v. Sulzer Morat GmbH,* 139 F.3d 877, 883 (Fed. Cir. 1998). This work at Stanford also is relevant to rebutting Dr. Tollison's testimony that the Stanford license agreement would not have been a factor in the hypothetical negotiation.

**3. Motion *In Limine* No. Three: To Preclude Testimony of Mark Nusbaum**

To exclude the testimony of Synthes' patent law expert, Mark Nusbaum. Granted in part and denied in part. The parties have agreed that each side may offer testimony through its expert (Thomas Smegal for Spinal Kinetics) identifying selected portions of the prosecution history and concerning PTO practice and procedure, but neither expert is allowed to render an opinion related to infringement or invalidity.[2]

**4. Motion *In Limine* No. Four: To Preclude Synthes's Use of Patent Applications Unrelated to Patents-In-Suit**

Pursuant to the court's oral order on September 22, 2011, Synthes has now identified statements and evidence from various Spinal Kinetics' patent applications it intends to offer as: (1) contradictory statements, specifically if Spinal Kinetics claims that certain prior art references teach something different than Spinal Kinetics claimed in its own patent applications or takes a contradictory position with respect to combining references; and (2) evidence showing how Spinal

---

[2] The court's prior order excluding all of Smegal's testimony is modified to the extent of this order.

PRETRIAL ORDER AND RULINGS ON MOTIONS *IN LIMINE*  —No. C-09-01201 RMW
7

1  Kinetics has used the words "substantially cylindrical" and "generally cylindrical" in its own patent
2  applications.
3       1. Spinal Kinetics' motion to preclude allegedly conflicting statements in its own patent
4  applications about what prior art references teach is denied.  The evidence that Synthes wants to
5  offer is relevant and admissible under FRE 801(d)(2) unless the probative value is substantially
6  outweighed by FRE 403 concerns.
7       Spinal Kinetics argues that statements made in the prosecution histories and patent
8  applications of its patents are not relevant because they were made regarding patents and
9  applications that do not have a familial relationship to the patent-in-suit, and because they were
10 made by attorneys, not persons of ordinary skill in the art.  Neither of these arguments is persuasive.
11      Spinal Kinetics also argues that statements made during prosecution of an application that
12 does not have a familial relationship to the patent-in-suit are irrelevant to construing the claims of
13 the patent-in-suit.  However, the evidence is not being offered to construe a claim but rather is being
14 offered to show what particular prior art references disclose.  Claim construction has been done by
15 the court and the question now is whether the limitations of the '270 patent are disclosed in the prior
16 art references, a factual question.
17      Federal Rules of Evidence 801(d)(2)(C) and (D) provide for the admissibility of a statement
18 that is "offered against a party" and is either (C) "a statement by a person authorized by the party to
19 make a statement concerning the subject" or (D) "a statement by the party's agent or servant
20 concerning a matter within the scope of the agency or employment, made during the existence of the
21 relationship." A party's prosecuting attorney is clearly a person authorized by the party to make
22 statements to the PTO about the subject of a patent application, including how prior art may be
23 distinguished.  *See e.g.*, *Williams v. Union Carbide Corp.*, 790 F.2d 552, 555 (6th Cir. 1986)("It is
24 the general rule that 'statements made by an attorney concerning a matter within his employment
25 may be admissible against the party retaining the attorney.'" (citations omitted)).  In the present case,
26 there can be no dispute that Spinal Kinetics' patent attorneys were authorized to make the statements
27 made to the PTO in these file histories, that such statements were within the scope of the patent
28 attorneys' agency and that the statements were made during the existence of the relationship.

Spinal Kinetics' argument that the prosecuting attorneys' statements are irrelevant because the attorneys are not skilled in the art and may have made overstatements overlooks what an admission is. First, arguing that a statement by a party's attorney to the PTO is irrelevant because the attorney may have been overzealous has no merit. Prosecuting attorneys have a duty of candor. In addition, admissions do not have to be based on personal knowledge and are "free from the restrictive influences of the opinion rule." FRE 801(d)(2), Adv. Comm. Notes.

Spinal Kinetics argues that the "teaching, suggestion, motivation" test was rejected in *KSR v. Teleflex*, 505 U.S. 398, 419-20 (2007) and, therefore, any statement about reasons to combine references is irrelevant. This argument lacks merit. Whether there is a "teaching, suggestion, motivation" is still relevant. *See Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1364 (Fed. Cir. 2008) ("a flexible TSM test remains the primary guarantor against a non-statutory hindsight analysis"). Further, *KSR* was decided on April 30, 2007, more than a year before Spinal Kinetics made its statement about there being no reason to combine Stubstad and Coppes.

The fact that the evidence from Spinal Kinetics' own patent applications may be relevant does not end the inquiry. FRE 403 allows exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues . . . or by considerations of undue delay . . . ."

If Spinal Kinetics seeks to invalidate the '270 patent on the basis of Stubstad '728, Baumgartner '697, or Copes '284 or a combination of two or more of these references, the jury is already going to have before it those references and will need to understand them. It should not be time consuming or confusing to explain to the jury that Spinal Kinetics applied for its own patents with respect to artificial discs and explained in those applications what certain prior art disclosed. Spinal Kinetics will not be unfairly prejudiced by having to explain the apparent differences between what it now says the prior art discloses and what it said in its patent applications.

2. Spinal Kinetics submits that admitting statements from its Reo '753 patent would confuse the jury and allow Synthes to improperly expand the scope of its claim to "generally cylindrical" from the narrower term "substantially cylindrical" used in the '270 patent. Therefore, Spinal Kinetics submits that the Reo '753 patent should not be admitted or discussed. It contends the

evidence is not only irrelevant but its presentation would raise serious FRE 403 concerns.

The question the jury must answer is whether the accused M6 device has a "substantially cylindrical" core as disclosed in the '270 patent. Synthes submits that in context "substantially" or "generally" cylindrical cores have shapes that are flattened cylinders similar in appearance to the natural nucleus pulposus. Synthes does not appear to see a significant difference, if any, between "generally" and "substantially." In Synthes' view both the accused M6 device and the Reo '753 patent have cores with that shape and the fact that Spinal Kinetics described the core in the Reo '753 patent as "generally cylindrical" shows that Spinal Kinetics actually views the M6 device as having a "substantially cylindrical core" or "generally cylindrical core" despite Spinal Kinetics' current litigation position.

The evidence has some potential relevance but FRE 403 concerns substantially outweigh the relevance. If the evidence were allowed, Spinal Kinetics would have to explain the different inventions, the significance of the difference between "generally" and "substantially" and the differences between the cores. This would present a potential for confusion and involve an undue consumption of time. The court excludes the evidence. This ruling may be subject to reconsideration depending on the evidence presented by Spinal Kinetics on why the M6 core is not "substantially cylindrical."

Synthes also seeks to admit examples of "substantially cylindrical cores" from Spinal Kinetics' U.S. Patent Application Publication No. 2009/0076612. Examples of "substantially cylindrical cores" are depicted as varying from the shape of a perfect cylinder because their outer peripheral surfaces are incised or ridged and because they have an internal square bore for receiving a driver tool. Given that the overall shapes are quite different from the allegedly "substantially cylindrical" core at issue in this case, the evidence is excluded under FRE 403 for substantially the same concerns about confusion and undue waste of time as with the Reo '753 patent.

**5. Motion *In Limine* No. Five: To Preclude Synthes from Offering Evidence From the Untimely August 19, 2011 Reports of Paul Ducheyne, Wilson C. Hayes and Robert D. Tollison**

Specifically, to preclude Synthes from offering evidence:

    1. contained in Expert Report #3 of Paul Ducheyne. Denied. The report merely offers more information and analysis based upon additional information and in response to rebuttal

PRETRIAL ORDER AND RULINGS ON MOTIONS *IN LIMINE*  —No. C-09-01201 RMW

reports of Dr. Levenston and Dr. Wilke, and it does not contain new infringement opinions. Spinal Kinetics will not be unfairly prejudiced by allowance of the testimony;

  2. contained in Supplemental Expert Report of Wilson C. Hayes. Denied. The Supplemental Report merely offers more information and analysis based upon additional information. It responds to Dr. Levenston and Dr. Wilke's rebuttal testing and statements. Dr. Hayes does not offer new infringement opinions. Spinal Kinetics will not be unfairly prejudiced by the offer of the admissible testimony; and

  3. contained in Supplemental Expert Report of Robert Tollison. Denied. Supplemental Report responds to Mr. Strong's report, does not present new damages calculation, and the offer of the admissible evidence from it will not prejudice Spinal Kinetics.

**Motion *In Limine* No. Six: Re Video Animation Used By Synthes at *Markman* Hearing**

To preclude use of video if not produced. Granted (Synthes agreed to produce).

**Motion *In Limine* No. Seven: To Exclude (1) Portions of Wilson C. Hayes Opening Expert Report of April 14, 2011; (2) Hayes & Associates Report (Exhibit 15 of the Hayes Opening Report); (3) Hayes & Associates Report of May 3, 2011; (4) Synthes' May 3 Test Data and (5) Synthes' May 3 Test Data and Preclude Related Testimony**

Preliminarily, the court notes that Spinal Kinetics' motion *in limine* seven is, in effect, a complex dispositive motion that would have more appropriately been brought before the dispositive motion cut-off.

Spinal Kinetics seeks to exclude Dr. Hayes' infringement opinions as unreliable because:

  1. Dr. Hayes' opinions were drawn from single image close-up photogrammetry. Denied. The opinion is not excludable as unreliable because image close-up photogrammetry was not used to make a precise measurement of tensile forces but used only to show that the fiber system is capable of absorbing tensile forces. This objection goes to weight, not admissibility);

  2. Dr. Hayes' opinions were drawn from repeated measurements of a single sample. Denied. This objection also goes to weight rather than admissibility. The methodology used by Dr. Hayes is clear and not so unreliable given the purpose of test to preclude admissibility;

  3. Dr. Hayes' opinions were drawn from comparison of two different cores to generalize effect of the fiber system on the core of the M6 device. Denied. Spinal Kinetics'

1  objection goes to weight rather than admissibility. The methodology used by Dr. Hayes is clear and
2  not so unreliable to be excludable; and

3         4. Dr. Hayes' testimony improperly changed the court's construction of the term
4  "flexible core" and expanded the court's construction of the "fiber system" by eliminating the
5  requirement that it "be capable of . . . constraining radial expansion of the flexible core." Granted in
6  part and denied in part. In certain respects Dr. Hayes' infringement contentions do not appear to
7  follow the court's construction and the motion is granted in that respect. The "flexible core" is not
8  the "central part" that contains components in addition to the "flexible core." Claim 29, the only
9  independent claim, states that the "central part" includes "a flexible core and a fiber system" ('270
10 patent 3:36-37) and requires that the "fiber system at least partially surround the [flexible] core." *Id.*
11 at 3:42-43. This language makes clear that the fiber system is a separate limitation from the "flexible
12 core" and the "flexible core" does not include the entire central part.

13       Synthes through Dr. Hayes suggests that the court should not have included "constraining
14 radial expansion of the flexible core" as a necessary capability of the "fiber system." Synthes in
15 essence asks the court to reconsider its construction of the "fiber system" and at most to construe the
16 term "fiber system" as requiring that it be "capable of absorbing tensile forces." Synthes' request to
17 reconsider claim construction by raising the issue in its oppositions filed on September 8, 2011 to
18 Spinal Kinetics' *in limine* motions is frustratingly late given that the court's claim construction order
19 was issued on June 23, 2010. In any event, the specification of the '270 patent, if the court is reading
20 it correctly, supports the court's construction.

21       The specification of the '270 patent distinguishes the invention from the prosthesis disclosed
22 in U.S. Pat. No. 4,911,718 ("Lee") by pointing out that in Lee the fibers "do not surround the core
23 and consequently, in the case of a radial expansion of the core, cannot accept any tensile force."
24 '270 patent 1:22 - 29. Addressing this problem appears to be one of the remedies provided by the
25 patent. *See id.* at 1:43-48; 57-61. Further, the specification provides that

> The axial compression forces deform the central part situated between the two end plates, *in particular an elastic formed body situated therein*, in such a manner that the central part radially buckles. This expansion of the central part is restricted by the fiber system surrounding the central part and the radial compression forces arising can be absorbed by the fibre system as a tensile force.

PRETRIAL ORDER AND RULINGS ON MOTIONS *IN LIMINE* —No. C-09-01201 RMW
12

*Id.* at 2:28-39 (emphasis added); *see id.* at 3:9-21; 5:36-46.

Unless the court is persuaded that its claim construction is wrong, there will be no modification of the court's existing construction of "flexible core" and "fiber system."

Synthes characterizes Spinal Kinetics' position to be that the court's construction requires "that the only relevant mechanism by which the 'fiber system' of claim 29 may be 'capable of absorbing tensile forces' is by Spinal Kenetics' preferred mechanism of 'radial expansion of the flexible [polymer] core.'" Pltf.'s Res. to Mot. *In Limine* No. 7, 15:19-21.  "**There is absolutely no reason** why Spinal Kinetics's proposal that the 'capability' to absorb such forces must now be restricted to the singular mechanism of 'constraining radial expansion . . . '." (*id.* at 16:15-17) (emphasis in original).  It does not appear to the court that Synthes has accurately described Spinal Kinetics' position.  In any event, the court's construction only requires that the fiber system be capable of absorbing tensile forces and constraining radial expansion.  The limitation is met if the accused product has a fiber system that is capable of absorbing tensile forces and is capable of constraining radial expansion regardless of whether there are other elements in the device that also absorb tensile forces and constrain radial expansion, or that the fiber system absorbs forces not related to radial expansion.

Spinal Kinetics asserts that Dr. Hayes also improperly construes the term "substantially cylindrical" by considering the function of a cylinder in determining whether the flexible core of Spinal Kinetics' M6 device meets that limitation.  The court did not construe "substantially cylindrical" because it considered "substantially" a descriptive word commonly used in patent claims to avoid precise constraints.  *See, e.g., Playtex Products, Inc. v. Proctor & Gamble Co.*, 400 F.3d 901, 907 (Fed. Cir. 2005).  Synthes argued at the claim construction hearing that the language "wherein the core is substantially cylindrical" was clear on its face, and that no construction was needed but suggested "wherein the core has a generally cylindrical shape" as an alternative to no construction.  Now Synthes wants to offer expert testimony that one skilled in the field would consider the core in Spinal Kinetics' device as "substantially cylindrical" because the terms "cylinder" and "cylindrical" "refer to, or to model, or approximate, spine-related structures that are not pure "cylinders" from a mathematical standpoint.  Hayes Rpt. at 38.  Dr. Hayes cites literature

PRETRIAL ORDER AND RULINGS ON MOTIONS *IN LIMINE*  —No. C-09-01201 RMW
13

that he asserts supports his opinion and also argues that one should "take into account what features of a 'substantially cylindrical' entity may advance the goal of achieving natural physiologic movement to the best extent possible, why such features contribute to this goal, and whether and how such features are, or are not, embodied in the flexible core structures of the accused Spinal Kinetics devices." *Id.* at 40-41.

Admittedly, the question of what is a claim construction issue for the court and what is an infringement question properly left to the fact-finder is often difficult to determine particularly with terms of degree like "substantial." However, here, Synthes has clearly gone from claiming the language was ordinary language needing no construction–making the determination of whether Spinal Kinetics' devices meet this limitation a factual question–to arguing that the language should be construed based upon extrinsic evidence to cover the core in Spinal Kinetics' devices. Not only is Synthes' apparent turnabout troubling, the court does not find Synthes' position supported. The intrinsic evidence does not suggest that "substantially cylindrical" is used in a way that differs from the way the words are commonly understood. The specification does not suggest that the inventors were acting as their own lexicographers in the use of the words. Synthes is precluded from arguing that "substantially cylindrical" has any special meaning or refers to anything other than the geometric shape of the core.

5. Spinal Kinetics asserts Dr. Hayes offers legal opinion that is irrelevant and unhelpful to the jury. The only specific opinion identified by Spinal Kinetics is Dr. Hayes' opinion that the outer endplates of the accused device are "rigid" or "substantially rigid." The motion to exclude that opinion is denied.

6. To preclude testimony by Dr. Hayes that accused device has a fiber system which is joined to the third and fourth plates. Denied.

7. To exclude evidence of testing contained in May 3rd Report because unreliable methodology used and insufficient data. Denied. Issue of is one of weight rather than admissibility.

8. To exclude Dr. Hayes' and Dr. Ducheyne's opinions related to Synthes' April 14 Test Data because it is a product of unreliable methodology. Denied. Issue is of one of weight rather than admissibility.

9. To exclude testimony contained in May 3rd report and Synthes' May 3rd test data because untimely and report does not qualify as supplemental report.  Denied.

10. To preclude Dr. Hayes from testifying on Synthes' May 3rd test data because he expressed no opinion in his expert reports on that test data.  Denied.

**Motion *In Limine* No. Eight: To Limit Any Testimony by David Koch at Trial**

Preclude Mr. Koch from testifying on (1) validity; (2) infringement; (3) testing of accused devices; and (4) injuries from infringement.  Granted in part and denied in part.  Mr. Koch has been sufficiently identified and his opinions disclosed to allow testimony on issues addressed in his three declarations, as amplified in this depositions.  The late testimony on testing was caused, in the main, by Spinal Kinetics' late production.  Mr. Koch does not appear to have been disclosed on subjects beyond those addressed in his declarations and depositions.  He cannot testify on infringement, validity or injuries from infringement except to the extent covered in his declarations and depositions.

**Motion *In Limine* No. Nine: To Limit and Exclude Testimony by Plaintiff's Expert Dr. Ducheyne and Related Evidence**

1. To limit Dr. Ducheyne's testimony on infringement to explaining the elements of the M6 device that meet the limitations "wherein the core is substantially cylindrical," "a fiber system," and "wherein the fiber system at least partially surrounds the core."  Granted because Dr. Ducheyne's infringement analysis was focused almost exclusively on those three elements.  He can express the opinion that if Dr. Hayes' opinion that the other limitations are found in the accused M6 device is accepted, there is infringement.  However, he cannot offer an independent infringement analysis involving the other limitations.

2. To limit Dr. Ducheyne's testimony with respect to "substantially cylindrical" to literal infringement because he failed to do any analysis under the doctrine of equivalents.  Granted to the extent that Dr. Ducheyne may not express an ultimate opinion as to whether there is a feature of the M6 device which is equivalent under the doctrine of equivalents to the "substantially cylindrical core" of the '270 patent.  He is not precluded from expressing his opinion on whether the M6 device has a "substantially cylindrical" core as that term is used in the '270 patent.

3. To exclude Dr. Ducheyne's testimony comparing the shape of the core to the shape of the natural nucleus pulposus rather than to the known geometric shape of a cylinder. Granted. *See* discussion of Motion *In Limine* No. 7 to the extent that infringement involves comparing the limitation of the asserted claim to the corresponding element of the accused device.

4. To exclude Dr. Ducheyne's testimony that the M6 device has a "substantially cylindrical" core as required by the '270 patent by comparing the function and structure of the natural nucleus pulposus with that of the accused core. Granted. The proper comparison is between the core shape limitation in the asserted claim and the shape of the core in the accused device. Synthes did not suggest during claim construction that there was a limit on how much the shape of the core court vary from the shape of a perfect cylinder and have the core still be considered "substantially cylindrical." *See, e.g., Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 907 (Fed. Cir. 2005) (importing numerical requirements or more exact construction of "substantially flattened surfaces" inappropriate). Whether the "substantially cylindrical" limitation is literally met depends on whether the jury finds the shape of the core to be "substantially cylindrical," not whether the core demonstrates some functional characteristics of a cylinder.

5. To preclude Dr. Ducheyne from supporting his "substantially cylindrical" opinion by the nine publications he cites. Granted. Claim construction is an issue for the court.

6. To exclude Dr. Ducheyne's testimony because he fails to explain why the ridges on the core do not remove the core from being considered "substantially cylindrical." Denied.

7. To exclude Dr. Ducheyne's testimony regarding the '753 Reo patent. Granted. *See above*.

8. To exclude Dr. Ducheyne's rebuttal testimony. Denied.

**Motion *In Limine* No. Ten: To Preclude Any Testimony by Michael Bushelow at Trial**

To exclude Mr. Bushelow from testifying because he was not properly disclosed. Denied. However, the testimony is limited to describing the testing he did of the accused devices and the results thereof.

**Motion *In Limine* No. Eleven: To Preclude Plaintiff's Experts from Expressing Opinions Not Based Upon the Court's Claim Construction**

Preclude Synthes' experts from referring to side-to-side movement of the core

("translation") as "radial expansion." Granted. "Radial expansion" as used in the '270 patent means expanding (becoming larger) in the radial direction while radial translation refers to side-to-side movement in radial directions. The '270 patent deals, among other things, with "radial expansion" (*see* '270 patent 1:22-28; 2:26-339; and 3:15-21). Radial translation is not mentioned in the patent.

Preclude Synthes' experts from substituting "contacting the flexible core" for "constraining radial expansion of the flexible core." Denied. The court does not understand plaintiff as trying to modify the court's claim construction, but rather as attempting to show that contact suggests that restraining occurred. This is a question of proof, not an attempted alteration of the patent's requirements.

DATED:   11/2/2011

RONALD M. WHYTE
United States District Judge